## BURTON v. COMMONWEALTH.

Court of Appeals of Kentucky.
June 20, 1952.

Rehearing Denied Sept. 26, 1952.

Moss Noble, Jackson, for appellant.
A. E. Funk, Atty. Gen., for appellee.

MOREMEN, Justice.

Appellant, Andrew Burton, was convicted of arson and sentenced to confinement in the penitentiary for 2 years. The grounds urged for reversal are: (1) the court did not instruct on conspiracy; (2) the court erroneously instructed that Homer Cole was an accomplice; and (3) that there was a separation of the jury after the case had been submitted. The indictment read in part:

"The Grand Jury of Breathitt County in the name and by the authority of the Commonwealth of Kentucky accuse Mace Burton, Andrew Burton and Homer Cole of the crime of arson Committed as follows: That said defendants in the county aforesaid and before the finding of this indictment did unlawfully, wilfully and feloniously enter into a conspiracy with each other for the purpose and intention to set fire to and burn the dwelling house of Nancy Ann Burton, which house was then occupied as a dwelling house by the said Nancy Ann Burton, and that while said conspiracy existed and in pursuance thereof the said defendant Andrew Burton did set fire to burn and destroy the said dwelling house; and the said defendants Homer Cole and Mace Burton being conveniently present did aid assist hire counsel advise and encourage the said Andrew. Burton to set fire to burn and destroy said house."

Upon motion for a severance the Commonwealth elected to try appellant.

A consideration of appellant's grounds for reversal requires a rather full statement of the facts. Mace Burton is the father of appellant and the husband of Nancy Ann Burton whose house was burned. Mace and Nancy Ann were married to each other when they were well past 70 years of age. Sometime prior to the fire, Mace and Nancy Ann separated. Homer Cole, one of the other persons charged in the indictment, is a boy about 15 years old who lived within a 100 yards of Nancy Ann's house. The witnesses produced by the Commonwealth testified that on January 8, 1951, a barn, belonging to Street Armstrong and located a short distance from Nancy Ann's house, had burned and she, being afraid to stay alone, re-

quested that Alpha Cole, mother of Homer Cole, and her daughter Charity stay with her the following night, which they did. About 9 o'clock on that night her house was set on fire on the outside and when she discovered it she called out, and her neighbors, Henry Armstrong and Homer Cole, responded and extinguished the blaze. About an hour and a half later, a second fire was started which destroyed the house.

Nancy Ann Burton testified that during the interim between the fires she saw a man come up to the fence around her lot but she could not identify him. However, Alpha Cole, Homer's mother, was more certain as to the identity of the trespasser. She testified:

"Q. Did you see and know who that was? A. The best I could see, it was Andrew Burton.

"Q. Did you notice where he went? A. No, sir. He was trying to hide himself behind some paling."

However, the second fire occurred at a time when Nancy Ann Burton and Alpha Cole had gone to the well which was just a step outside the kitchen door, and the only persons in the house were Homer Cole and Charity Cole.

Homer Cole testified that on Saturday morning, prior to the burning which occurred on Tuesday, he met appellant who asked him to meet him at Jess Minton's house the following morning, which he did. There appellant offered him $25 to help burn Nancy Ann Burton's house. There is no testimony that he accepted this offer. He testified that on Tuesday night he saw Andrew Burton set the fire on the outside of the house and after he put out the fire he talked to Andrew Burton who said "he was going to set that house or run over the top of us." After Cole returned to the house and was with his younger sister Charity, aged 10 years, Burton came to the door and knocked. He said, "I opened it, he come in and run and set it in some cotton, and he said if I told it he would kill me."

Charity Cole corroborated the portion of his testimony pertaining to the actual ignition of the house.

The defense was an attempt to prove an alibi.

We find no prejudicial error in the instructions as given. The court properly submitted the only issue in the case which concerned Andrew Burton's guilt as principal in the commission of the crime. It is true that the indictment jointly charged Andrew Burton, Mace Burton and Homer Cole with the crime as principals, still it specifically charged that Andrew Burton did actually set the fire, and that Homer Cole and Mace Burton were only accessories or accomplices in its commission. This was a mere description of the manner in which appellant committed the crime of arson. After the severance, Andrew alone was on trial and if he was in fact the chief operator and principal, it was not necessary to submit the question as to whether or not he acted as the result of a conspiracy. He had been accused of arson and tried upon that accusation. When the proof indicated that he acted alone and not as a result of a conspiracy, it was not necessary to instruct concerning a situation which was not presented by the evidence.

Appellant complains next because the court submitted this instruction: "The court instructs the jury that an accomplice in the meaning of the law is one of two or more equally concerned in the commission of a crime either as principal or one who aids or abets in the commission of the crime, and that Homer Cole is an accomplice in the burning of the said house, and the jury can not convict the defendant, Andrew Burton, upon the testimony of Homer Cole unless his testimony is corroborated by other testimony tending to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstance thereof," and argues that when the court designated Homer Cole as an accomplice in the burning of the house, he, in effect, told the jury that a conspiracy did, in fact, exist and there was nothing further for the jury to do but to decide the amount of punishment. We believe that the evidence introduced in this case did not war--

rant a positive instruction, as a matter of law, that Homer Cole was an accomplice. However, we do not believe that the instruction was prejudicial. It was more favorable to appellant than it was required to be. The instruction was given for the purpose of satisfying the requirements of Section 241 of the Criminal Code of Practice which provides that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. Under the usual instruction the court permits the jury to determine whether or not a person is an accomplice. The jurors are told first that if they believe he is an accomplice, then his testimony alone is not sufficient but must be corroborated. Here the jury was told directly that appellant could not be convicted on the testimony of Homer Cole alone. We think the error was harmless.

Appellant finally complains that there was a separation of the jury in a manner prohibited by Section 244 of the Criminal Code of Practice. At the request of the Commonwealth, Judge Turner made a statement for the record concerning this happening. It is as follows:

"At this point the Commonwealth requests the court to make a statement into the record of what happened and as to what was said:

"By the Court: Honorable Ervine Turner: 'The jury room was to my right, aproximately sixteen feet from where I sat, Mr. Davidson opened the door and came and asked me what effect this would have on the other two, what effect this trial would have on the other two, I told him I could not tell him anything in regard to that, that they had the matter before them and to go back and bring us a verdict. In my judgment from the time he left the door of the jury room until he returned it was somewhere between a half and three quarters of a minute. He just came in and asked me and went straight back. As I remember, the door of the jury room was slight-

ly open during the time he was out here.'

"Cross Examination

"By Mr. Noble.

"Q. 1    Judge, did any of the other members of the jury hear what you told Mr. Davidson?  A.  I don't think so.

"Direct Examination

"By Mr. Allen.

"Q. 1  You stated all that took place between the juror and yourself?  A. Yes, sir.

"Q. 2  Did you watch him until he went back to the jury room?  A.  No, he went straight back but some question was raised and I didn't watch him all the time."

It is plain from the foregoing statement that this separation of the juror from the other members was not of the nature contemplated by the Criminal Code of Practice. It is one that has happened on many occasions and we find it harmless.

The consideration of the whole record leads us to the belief that appellant had a fair trial and the judgment is therefore affirmed.